UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

AIXA VIRUET,                                     :
                                                 :
                          Plaintiff,             :
                                                 :
          - against -                            :
                                                 :
PORT JERVIS CITY SCHOOL DISTRICT,                :
                                                 :
                          Defendant.             :

------------------------------------------------------------------------x

USDC SDNY

DOCUMENT

ELECTRONICALLY FILED

DOC#_____

DATE FILED:  8/13/13____

**OPINION AND ORDER**
11-CV-1211 (ER)

Ramos, D.J.:

Plaintiff Aixa Viruet ("Plaintiff" or "Viruet") brings this action against the Port Jervis

City School District ("Defendant" or the "District") pursuant to Title VII of the Civil Rights Act

of 1964, 42 U.S.C. §§ 2000e-2000e-17, alleging discrimination based upon Plaintiff's national

origin, race and color.  Complaint ("Compl.") (Doc. 1) ¶ 33.  Pending before the Court is

Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (Doc. 24.)  For the

reasons set forth below, Defendant's motion for summary judgment is DENIED.

I.      **Factual Background**

The following facts are undisputed except where otherwise noted.

Plaintiff is a Hispanic female who was employed by the District as a bus driver from

December 1995 through the 2009-2010 school year.[1]  Pl.'s 56.1 Counter-Stmt. ¶¶ 1-2.[2]  Plaintiff

was the only Hispanic bus driver employed by the District from at least December 2005 until the

end of her tenure.  Declaration of Richard S. Sklarin ("Sklarin Decl."), Ex. AA (Pl. Depo. Tr.) at

138; Affirmation of Christopher D. Watkins ("Watkins Aff."), Ex 6 (Case Depo. Tr.) at 6-8.

---

[1] The District contracted out its transportation services to a private vendor in 2008.  Def.'s 56.1 Stmt. ¶ 54.  As of
June 2010, the District no longer employed any bus drivers.  *Id.* ¶¶ 54-55.

[2] Citations to "Pl.'s 56.1 Counter-Stmt." refer to Plaintiff's Counter-Statement of Material Facts pursuant to Local
Civil Rule 56.1, Doc. 37.  Citations to "Def.'s 56.1 Stmt." refer to Defendant's Statement of Material Facts pursuant
to Local Civil Rule 56.1, Doc. 29.

### a. The Collective Bargaining Agreement

In 2007, a collective bargaining agreement ("CBA") between the District and the Civil Service Employees' Association, Inc., Local 1000 ("CSEA"), of which Plaintiff was a member, was adopted. *See* Sklarin Decl., Exs. H, K; *see also* Pl.'s 56.1 Counter-Stmt. ¶ 24. The CBA contained certain modifications to the previous 2002-2007 agreement and covered the period July 1, 2007 through June 30, 2010. *See* Sklarin Decl., Ex. H at Art. 26.

As relevant to the instant motion, under the heading "Health Insurance," the CBA states that a "Health Benefit Eligible CSEA Employee" shall be defined as follows: "(A) [a]n employee hired on or after July 1, 2007 and who works a specified work schedule consisting of not less than thirty-two (32) hours per week; (B) [a]n employee hired prior to July 1, 2007 that does not currently work a specified work schedule of thirty-two (32) hours per week and does not qualify for health benefits as of July 1, 2007 will be deemed eligible to qualify for health benefits when he, she or they work a specified work schedule consisting of not less than thirty-two (32) hours per week." The Agreement continues by stating:

> Notwithstanding the foregoing, all CSEA employees currently receiving health, dental and vision benefits pursuant to the provisions of the immediate predecessor Collective Bargaining Agreement . . . shall nevertheless be entitled to maintain and continue his, her or their eligibility for such health, dental and/or vision benefits, provided however, that such employee shall substantially maintain his, her or their current levels of hours worked. The term 'substantially maintain his, her or their current level of hours worked' shall be interpreted and defined to mean a continued specified work schedule consisting of not less than twenty (20) hours per week.

Sklarin Decl., Ex. H at 16.

Additionally, the CBA provides that "[a]ny employee may request a leave of absence without pay. Said leave shall not be more than two (2) years in length and all the employees'

2

benefits and seniority shall be preserved." *Id.* at 14.

### b. The 2006-2007 School Year

As an eligible District employee, Plaintiff applied for, and was granted, a one-year leave of absence, effective September 1, 2006.  Def.'s 56.1 Stmt. ¶ 9.

Plaintiff contends that she was improperly denied a salary step increase during her 2006-2007 leave of absence, and that such denial was not consistent with the CBA or Defendant's treatment of Maureen Shima, a Caucasian bus driver employed by the District, who received a step increase following her one-year leave of absence.  Pl.'s Reply to Def.'s 56.1 Stmt. ¶ 5;[3] *see also* Declaration of Maureen Shima ("Shima Decl."), Ex. 1; Sklarin Decl., Ex. H at 8 ("Entitlement to Increments"), 14 ("Leave of Absence").  Defendant, on the other hand, contends that Plaintiff's 2006-2007 leave of absence disqualified her for a step increase "under the applicable CSEA Agreement."  Def.'s 56.1 Stmt. ¶ 5; *see also* Affidavit of Lorelei Case ("Case Aff.") ¶ 15.

It is undisputed that Plaintiff received a one step increase after her return to work for the 2007-2008 school year and that she continued to receive step increases each year for the rest of her tenure as a District driver.  Def.'s 56.1 Stmt. ¶ 6; *see also* Sklarin Decl., Ex. T.

### c. The 2008-2009 School Year

#### i. August 15, 2008 Driver Pick Day

On August 11, 2008, Plaintiff made a written request for an unpaid four month leave of absence to William Montgomery, Interim Transportation Director/Administrator.  Def.'s 56.1 Stmt. ¶ 31.  Plaintiff requested that the leave begin on September 1, 2008, before the first day of

---

[3] Citations to "Pl's Reply to Def.'s 56.1 Stmt." refer to Plaintiff's Reply to Defendant's Statement of Material Facts Pursuant to Local Civil Rule 56.1, Doc. 37.  Citations to "Def.'s Response to Pl.'s 56.1 Counter-Stmt." refer to Defendant's Response to Plaintiff's Rule 56.1 Counter-Statement, Doc. 39-1.

school for the 2008-2009 school year (i.e., September 3, 2008).  *Id.* ¶ 32; *see also* Affidavit of

William Montgomery ("Montgomery Aff."), Ex. B.  Mr. Montgomery met with Plaintiff and

explained to her that he did not have a problem approving her request, but that if she was

approved for leave, she would forfeit her place to select a bus run during the August 15, 2008

Driver Pick Day, and that her seniority would not be affected when she returned.  Montgomery

Aff., Ex. E; Sklarin Decl., Ex. AA (Pl. Depo. Tr.) at 139-41.  Plaintiff's request was ultimately

approved by the Board of Education on September 4, 2008 (effective September 1, 2008).

Montgomery Aff., Ex. G.

Plaintiff alleges that Defendant improperly precluded her from participating in the 2008

Driver Pick Day, and claims that it permitted Ms. Shima and Bobbi DiDonato, another

Caucasian District bus driver, to bid on a bus run for the 2008-2009 school year, notwithstanding

that both employees were also scheduled to be out on leave during the year.  Pl.'s 56.1 Counter-

Stmt. ¶¶ 16-17.  Defendant claims, however, that in accordance with CSEA's past practices, both

Ms. Shima and Ms. DiDonato were allowed to participate in the August 2008 Driver Pick Day

because, unlike Plaintiff, they had advised the District that they intended to be at work for the

first day of the 2008-2009 school year.  *See* Case Aff. ¶ 10.  In response to Plaintiff's assertion

that Ms. Shima did not, in fact, tell the District that she intended to be at work for the first day of

the school year, Defendant states that Ms. Shima's attendance records confirm that she called in

sick for the first nine days of the 2008-2009 school year, demonstrating her intention to return to

work at the beginning of the year (before resuming her leave of absence later in September).

Def.'s Response to Pl.'s 56.1 Stmt. ¶ 15; *see also* Sklarin Decl., Ex. Z.  However, although Ms.

Shima's leave began February 1, 2008 and was initially only scheduled to last three months with

the possibility of an extension, the District's documents indicate that *as of May 6, 2008*, Ms.

Shima's leave was "effective" June 1, 2008 to January 31, 2009.  Sklarin Decl., Ex. Z.

Moreover, Plaintiff submitted the declaration of Ms. Shima, which states that she did not advise

the District that she intended to return from leave for the first day of school in September 2008.

*See* Shima Decl. ¶ 2.  With respect to Ms. DiDonato, Plaintiff contends that "District records

reflect that she was out as of September 1, 2008."  Pl.'s 56.1 Counter-Stmt. ¶ 17.  Defendant, on

the other hand, argues that Ms. DiDonato's leave of absence was not scheduled to begin until

September 10, 2008 (i.e., the sixth day of the 2008-2009 school year) and that District attendance

records "confirm that, despite being available to work on the first day of school, she called in

sick for the first 4 days of school."  Def.'s Response to Pl.'s 56.1 Counter-Stmt. ¶ 17.

### ii.  Plaintiff's Health Insurance

It is undisputed that Plaintiff's District health insurance was terminated as of August 31,

2008, her last day on the job before her leave of absence was to begin, and that Cobra Services

mailed her a letter, dated August 31, 2008, notifying her of her eligibility for continuation of

health insurance benefits under Cobra.  *See* Sklarin Decl., Ex. R.  Plaintiff contends, however,

that she was wrongfully "stripped of her health benefits," and that she was treated differently

than Ms. Shima, who was permitted to retain her District health insurance for the entirety of her

one-year leave of absence.  Pl.'s 56.1 Counter-Stmt. ¶¶ 18-19; *see also* Shima Decl., Ex. 1.

Defendant, on the other hand, contends that "plaintiff's District health insurance coverage

automatically elapsed following completion of the 2007-2008 school year as of August 31,

2008."  Def.'s 56.1 Stmt. ¶ 39.  However, the Termination of Coverage form, attached to the

Sklarin Declaration as Exhibit R, indicates that the reason for Plaintiff's termination of benefits

was because of her leave of absence, rather than as a result of the completion of the school year.

Sklarin Decl., Ex. R.  Moreover, while Defendant admits that Ms. Shima "received District

health benefits during her 2008-2009 leave of absence after being paid for the first pay period of September 2008," it asserts that her receipt of such benefits was "improper."  Def.'s Response to Pl.'s 56.1 Counter-Stmt. ¶ 18.

Upon her return from leave, Plaintiff was initially not assigned a dedicated bus run, and was rather given runs that were available at the time as a "substitute" or "contract" driver.  Pl.'s 56.1 Counter-Stmt. ¶ 20; Def.'s Response to Pl.'s 56.1 Counter-Stmt. ¶ 20; *see also* Case Aff. ¶ 12.  In April 2009, Plaintiff was offered bus run "T," which she drove until the end of the school year.  Sklarin Decl., Ex. T.  Plaintiff's time records reflect a range of hours worked between 8.75 hours and 35.75 hours (with five timecards referencing working 32 hours or more).  Sklarin Decl., Ex. T.

It is undisputed that upon her return from leave, Plaintiff's health insurance benefits were not restored.  Pl.'s 56.1 Counter-Stmt. ¶¶ 22, 30.

### iii.  Plaintiff's Evaluation

On March 23, 2009, Mr. Montgomery completed a CSEA Employee Evaluation for Plaintiff, which she reviewed and signed on April 2, 2009.  Montgomery Aff., Ex. H.  Plaintiff claims that Defendant subsequently altered the evaluation after she and Mr. Montgomery signed it.  Specifically, Plaintiff claims that Defendant changed Plaintiff's "satisfactory" evaluation for the category "takes job seriously and values the importance of regular attendance" to "in development."  *Compare* Montgomery Aff., Ex. H *with* Watkins Aff., Ex. 3.  Defendant concedes that the evaluation was subsequently changed.  Specifically, it contends that the evaluation was "updated" by "correcting the response" regarding Plaintiff's attendance upon the review of the preliminary evaluation with Plaintiff's attendance records by Lorelei Case, Assistant Superintendent for Business, and after further consultation with Mr. Montgomery.

Doc. 39-1 at 1.  Defendant admits that Exhibit 3 to the Watkins Affidavit is a copy of the "preliminary" CSEA Employee Evaluation given to and signed by Plaintiff before her attendance records were reviewed by Ms. Case and the evaluation was "updated."  Def.'s Response to Pl.'s 56.1 Counter-Stmt. ¶ 6.  Defendant contends, however, that the change from the preliminary evaluation was "personally explained" to Plaintiff and that the updated evaluation was then returned to Ms. Case's office on June 25, 2009.  *Id.*

### d.  Plaintiff's New York State Division of Human Rights Complaint

Plaintiff filed a complaint against the District with the New York State Division of Human Rights ("NYSDHR") in May 2009, alleging discrimination based on Plaintiff's national origin.  Watkins Aff., Ex. 12.  On September 1, 2010, the NYSDHR issued a Determination After Investigation, which stated that "[a]fter investigation, the Division has determined that it has jurisdiction in this matter and that probable cause exists to believe that the Respondent has engaged in or is engaging in the unlawful discriminatory practice complained of."  Watkins Aff., Ex. 13.

## II.   Legal Standard

### a.  General Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986)).

### b. Additional Summary Judgment Standards for Employment Discrimination Cases

Courts are cautious in granting summary judgment in employment discrimination cases where the employer's intent is at issue, *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008); however, "'[s]ummary judgment is appropriate even in discrimination cases, for . . . the salutary

purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation.'" *Hongyan Lu v. Chase Inv. Servs. Corp.,* 412 F. App'x 413, 415 (2d Cir. 2011) (quoting *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000)).  Indeed, "'[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'" *Feingold v. New York,* 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)).  Furthermore, "[e]ven in the discrimination context, [] a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb,* 521 F.3d at 137; *see also Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).  A "nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)).

"[S]ummary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial.  There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted).  "Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer." *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010) (citing *Budde v. H & K Distrib. Co.,* No. 99–9449, 216 F.3d 1071 (table), 2000 WL 900204, at *1 (2d Cir. June 29, 2000)).

III.     **Defendant's Summary Judgment Motion**

Plaintiff alleges that Defendant violated Title VII because it discriminated against her on the basis of her race by:  (i) improperly denying her the right to "bid" on a "contract bus run" during the August 15, 2008 Driver Pick Day; (ii) wrongfully denying her her District health care benefits upon her return to work in January 2009 after a four-month leave of absence; and (iii) denying her a step pay increase based on a 2006-2007 leave of absence.  Pl.'s Mem. L. Opp. 8. Defendant argues that it is entitled to summary judgment because Plaintiff failed to exhaust available administrative remedies under the CBA before filing the instant action.  Alternatively, Defendant argues that Plaintiff cannot carry her burden of proving intentional discrimination under the standard articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> **a.   Plaintiff was not Required to File a Grievance Under the CBA Prior to Bringing the Instant Action**

Defendant argues that Plaintiff's claim must fail because she did not file a grievance against the District pursuant to the grievance procedures outlined in the CBA.  Although Plaintiff does not dispute that she did not file a grievance, she argues that she was not required to do so because the CBA "does not explicitly state that statutory discrimination claims are subject to arbitration."  Pl.'s Mem. L. Opp. 7.

In *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), the Supreme Court held that "a collective-bargaining agreement that *clearly and unmistakably* requires union members to arbitrate ADEA claims is enforceable as a matter of federal law."  *Id.* at 274 (emphasis added). Although "[i]t is clear that the Court's holding [in *Pyett*] applies with equal force to Title VII claims," *Borrero v. Ruppert Hous. Co.*, No. 08 Civ. 5869 (HB), 2009 WL 1748060, at *2

(S.D.N.Y. June 19, 2009), the CBA at issue here does not "clearly and unmistakably" require union members to arbitrate discrimination claims under Title VII or any other anti-discrimination statute.  Rather, the CBA defines a grievance as a "dispute over the interpretation, inequitable application, misapplication, or alleged violation of the terms of [the CBA]."  Sklarin Decl., Ex. H at 32.  Defendant argues that because Plaintiff's allegations "arise out of, and are undisputedly connected with, specific portions of the applicable collective bargaining agreement," the grievance procedure outlined in the CBA is applicable to Plaintiff's Title VII claim.  Def.'s Mem. L. 9.  Although Defendant's defenses to Plaintiff's allegations may rely on its interpretation of the CBA, Plaintiff clearly states a claim of discrimination under Title VII that does not solely rely upon allegations that the District inequitably or incorrectly applied the provisions of the CBA.  Rather, Plaintiff alleges that the District treated her differently than similarly-situated employees by, *inter alia*, precluding her from participating in the August 2008 Driver Pick Day[4] and terminating her health insurance due to her four-month leave of absence.

Moreover, the cases upon which Defendant relies actually support Plaintiff's position, as they all involve the application of nondiscrimination provisions that *explicitly* state that discrimination claims, including claims made pursuant to Title VII, shall be subject to the grievance procedures of the collective bargaining agreements.  *See Bouras v. Good Hope Mgmt. Corp.*, No. 11 Civ. 8708 (WHP), 2012 WL 3055864, at *1, *4 (S.D.N.Y. July 24, 2012) ("The CBA at issue here . . . expressly provides that employee discrimination claims under Title VII, as well as under state and local anti-discrimination laws, 'shall be subject to the grievance and arbitration procedure . . . as the sole and exclusive remedy for violation.'  This language clearly

---

[4] The Court notes that Defendant repeatedly maintains that its decision not to permit Plaintiff to participate in the 2008 Driver Pick Day was due to "the CSEA's past practices," Def.'s Mem. L. 4, and not any particular provision of the CBA.

and unmistakably requires arbitration of [the plaintiff's] Title VII claim."); *Veliz v. Collins Bldg. Servs., Inc.*, No. 10 Civ. 06615 (RJH), 2011 WL 4444498, at *2, *4 (S.D.N.Y. Sept. 26, 2011); *Morris v. Temco Serv. Indus., Inc.*, No. 09 Civ. 6194 (WHP), 2010 WL 3291810, at *1, *4 (S.D.N.Y. Aug. 12, 2010); *Johnson v. Tishman Speyer Props., L.P.*, 09 Civ. 1959 (WHP), 2009 WL 3364038, at *1, *3 (S.D.N.Y. Oct. 16, 2009).  Unlike the contractual provisions at issue in the above-cited cases, the CBA here does not state that claims made pursuant to Title VII are subject to its grievance procedures; indeed, the CBA nowhere indicates that discrimination of any kind is prohibited.  Accordingly, because the CBA does not "clearly and unmistakably require[] union members to arbitrate [Title VII] claims," *Pyett*, 556 U.S. at 274, Plaintiff was not required to file a grievance under the CBA.  *See Shipkevich v. Staten Island Univ. Hosp.*, No. 08 Civ. 1008 (FB) (JMA), 2009 WL 1706590, at *2 (E.D.N.Y. June 16, 2009) (holding that the CBA did not mandate arbitration of plaintiff's Title VII claim where "[n]owhere in the CBA is there an explicit statement that such claims are subject to mandatory arbitration;" rather, the CBA prohibits "discrimination with a list of protected characteristics and [does] not mention any statutes" and "[d]espite this broad language," the CBA "[does] not mandate arbitration of statutory antidiscrimination claims") (citation omitted).

In further support of its position, Defendant points to Section 6120 of the Port Jervis City School District's policy statements,[5] which states that "[t]hose intending to file a grievance due to alleged discrimination must follow the grievance procedure as established by the District." Def.'s Reply Mem. L. 5.  The Supreme Court in *Pyett* based its holding in part on the fact that the union and the employer "collectively bargained in good faith and agreed that employment-related discrimination claims . . . would be resolved in arbitration" and that "[t]his freely

---

[5] Defendant does not explain in its submissions to the Court the purpose or effect of the District's policy statements, or indicate what relationship, if any, it has to the CBA.

negotiated term . . . easily qualifies as a 'condition of employment' that is subject to mandatory

bargaining."  *Pyett*, 556 U.S. at 256.  Here, the District policy statements were "formulated by

the Board of Education of the Port Jervis City School District," and there is no indication that

they were negotiated or agreed upon by the CSEA.  Sklarin Decl., Ex. I.  Thus, the Court finds

that because the District's policy statements were formulated by the District, and not the CSEA,

they do not require Plaintiff to arbitrate her discrimination claims.

### b.  Legal Standard for Title VII Claims

Plaintiff's Title VII discrimination claim is properly analyzed under the three-step

burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973).  Under the *McDonnell Douglas* framework, a plaintiff alleging a

Title VII violation must first demonstrate a *prima facie* case of discrimination.  *Id.* at 802.  The

Second Circuit has explained that a plaintiff's burden at this stage is minimal.  *Abdu-Brisson,*

239 F.3d at 467.  Nonetheless, in order to state a *prima facie* case of discrimination, "a plaintiff

must proffer some admissible evidence of circumstances that would be sufficient to permit an

inference of discriminatory motive," *Bennett v. Watson Wyatt & Co.,* 136 F. Supp. 2d 236, 246

(S.D.N.Y. 2001), *aff'd*, 51 F. App'x 55 (2d Cir. 2002), and cannot meet her burden through

reliance on unsupported assertions.  *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d

14, 18 (2d Cir. 1995).  "Statements that are devoid of any specifics, but replete with conclusions,

are insufficient to defeat a properly supported motion for summary judgment."  *Griffin v. Ambika*

*Corp.,* 103 F. Supp. 2d 297, 308 (S.D.N.Y. 2000).  A plaintiff's self-serving statement, without

direct or circumstantial evidence to support the charge, is also insufficient.  *Fincher v.*

*Depository Trust & Clearing Corp.*, No. 06 Civ. 9959 (WHP), 2008 WL 4308126, *3 (S.D.N.Y.

Sept. 17, 2008) (citing *Gonzales v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 353 (S.D.N.Y.

13

2003)), *aff'd*, 604 F.3d 712 (2d Cir. 2010).

If a plaintiff successfully presents a *prima facie* case, the defendant must then rebut the presumption of discrimination by offering legitimate and non-discriminatory reasons for the adverse employment action demonstrated in plaintiff's *prima facie* case. *Abdu-Brisson,* 239 F.3d at 468 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  The defendant's burden at this step in the analysis is also "light."  *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir. 1998).  "The employer need not *persuade* the court that it was motivated by the reason it provides; rather it must simply articulate an explanation that, if true, would connote lawful behavior."  *Id.* (emphasis in original).

"If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted," and "drops from the case."  *Burdine*, 450 U.S. at 255, 255 n.10.  Under the third step of the *McDonnell Douglas* framework, the burden then shifts back to the plaintiff to prove intentional discrimination by a preponderance of the evidence.  *Abdu-Brisson*, 239 F.3d at 469.  The plaintiff may meet her burden by demonstrating that the employer's proffered reason "was not the true reason for the employment decision," however, proof that the employer's proffered justification is false, however persuasive, "is simply one form of circumstantial evidence that is probative of intentional discrimination."  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 81 (2d Cir. 2001) (internal quotation marks and citations omitted).  Instead, the plaintiff may rely on evidence—circumstantial or otherwise—demonstrating that "'an impermissible reason was a 'motivating factor,' without proving that the employer's proffered explanation' played no role in its conduct."  *Id.* (quoting *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120 (2d Cir. 1997)); *see also Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995).  Accordingly, although the plaintiff may carry her burden

14

by presenting additional evidence showing that "the employer's proffered explanation is unworthy of credence," it "may often be carried by reliance on the evidence comprising the *prima facie* case, without more."  *Cronin*, 46 F.3d at 203 (citations omitted).  Thus, unless the employer has come forward with "evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject," the conflict between the plaintiff's evidence establishing a *prima facie* case and the employer's evidence of a legitimate, nondiscriminatory reason for the adverse employment action "reflects a question of fact to be resolved by the factfinder after trial."  *Id.* (citing *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994)).

### i.  Plaintiff has Stated a *Prima Facie* Case of Discrimination

To state a *prima facie* case of discrimination, a plaintiff must show that:  (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination.  *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010).  Defendant does not appear to dispute that Plaintiff is a member of a protected class and was qualified for her position as a District bus driver.  Def.'s Mem. L. 12.  Rather, Defendant argues that "no adverse employment action was actually taken . . . which could give rise to an inference of discrimination."  *Id.*  In furtherance of its argument, Defendant maintains that its "*granting* of Plaintiff's August 2008 request for a 4 month leave of absence (when she was not eligible to participate in the August 15, 2008 Driver Pick Day in accordance with CSEA's past practices, nor eligible for District health insurance following its automatic expiration on August 31, 2008) demonstrates that no adverse employment action was actually taken."  *Id.*  However, Plaintiff's discrimination allegations do not arise from the District's granting of her request for a

four-month leave of absence; rather, the adverse employment actions of which Plaintiff complains is the District's refusal to permit her to "bid" for a contract bus run in August 2008, its termination of her health care benefits, and its denial of her step pay increase following her 2006-2007 leave of absence.  Simply because some of Defendant's actions may have been beneficial to Plaintiff (i.e., granting her request for a leave of absence) does not necessarily mean that *none* of its actions may constitute adverse employment actions.[6]

An adverse employment action is defined as a "materially adverse change in the terms, privileges, duration and conditions of employment," *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002), and may include, *inter alia*, "a termination of employment, a demotion evidence[d] by a decrease in pay or salary, a less distinguished title, [or] a material loss of benefits."  *Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 392 (S.D.N.Y. 2011) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).  The Court finds that the District's actions that form the basis of Plaintiff's claim constitute "adverse employment actions," as they caused or resulted in a decrease in Plaintiff's pay and a loss of her benefits.

Moreover, Plaintiff has submitted evidence that she was treated differently than similarly-situated Caucasian drivers, and has therefore raised an inference of discrimination.  *See Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("A showing of disparate treatment—that is, a showing that an employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case.") (citation omitted).  Specifically, Plaintiff has submitted evidence that Ms. Shima was permitted to participate in the August 2008 Driver Pick

---

[6] Similarly, the fact that Plaintiff never alleged any discrimination by the District during the first 15 years of her employment as a bus driver, Def.'s Mem. L. 4, is irrelevant to the question of whether she has demonstrated a *prima facie* case of discrimination with respect to the District's actions following her 2006-2007 leave of absence and her August 2008 request for a four month leave of absence.

Day, notwithstanding the fact that she was on leave from June 1, 2008 to January 31, 2009.[7]

Additionally, it is undisputed that, unlike Plaintiff, Ms. Shima received District health benefits

during the entirety of her one year leave of absence.  Def.'s Response to Pl.'s 56.1 Stmt. ¶ 18.

Finally, Plaintiff has submitted evidence, which Defendant has failed to rebut, that Ms. Shima

received a step increase during her one-year leave of absence.  Accordingly, the Court finds that

the adverse employment actions to which Plaintiff was subject took place under circumstances

from which an inference of discrimination can be drawn.

### ii.  Plaintiff has Submitted Sufficient Evidence to Allow the Issue of Defendant's Intent to go to a Jury

Defendant contends in its moving papers that its conduct, both before and after Plaintiff's

August 2008 request for leave was granted, "was for a legitimate, non-discriminatory purpose

(ensuring that District drivers at least expressed an intention to show up for the first day of work

each school year on routes they were familiar with, so children in the District could be driven to

school safely and promptly, as well as providing health benefits to District drivers qualified to

receive them under the applicable CBA in effect)."  Def.'s Reply Mem. L. 6.  However,

Defendant fails to cite to *any* evidence in the record to support its proffered "legitimate, non-

discriminatory purpose" for the actions it took against Plaintiff.  Indeed, despite repeatedly

asserting in its submissions that "CSEA's past practices" precluded Plaintiff from participating in

the August 2008 Driver Pick Day because she would not be "ready, willing and able to work on

the first day of school," Def.'s Mem. L. 4, Defendant fails to cite to any documents or testimony

evidencing the existence of any such policy or practice.  Moreover, although Defendant argues

---

[7] A plaintiff relying on disparate treatment evidence "must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself."  *Mandell*, 316 F.3d at 379 (citation omitted).  Here, Defendant does not appear to contest that Ms. Shima and Ms. DiDonato were similarly-situated to Plaintiff and were subject to the same CBA at all relevant times.  Moreover, the question of whether two employees are similarly situated is ordinarily a question of fact for the jury.  *Id.*

that Plaintiff's claim of disparate treatment by the District is unfounded given her "undisputed, longstanding history of chronic absenteeism," the Court notes that the issue of Plaintiff's attendance is, in fact, strongly disputed by the parties.  Def.'s Reply Mem. L. 8.  Indeed, Plaintiff argues that Defendant originally evaluated Plaintiff's attendance record as "satisfactory" during her March 2009 evaluation, and subsequently changed Plaintiff's "satisfactory" to "in development" in order "to portray plaintiff in a negative light."  Pl.'s 56.1 Counter-Stmt. ¶¶ 5-8. Although Defendant contends that Ms. Case "updated" Plaintiff's evaluation upon her review of Plaintiff's attendance records, Doc. 39-1 at 1, it is undisputed that the version of the evaluation that Mr. Montgomery gave to Plaintiff contemporaneously with her evaluation, and which Plaintiff signed, indicated that her attendance was "satisfactory."  Additionally, although Defendant contends that Plaintiff's evaluation was changed upon Ms. Case's review of her attendance record, it fails to submit *any* evidence to corroborate its proffered rationale for changing Plaintiff's evaluation.  Moreover, contrary to Defendant's assertion that the change was "personally explained" to Plaintiff before it was returned to Ms. Case's office on June 25, 2009, Def.'s Response to Pl.'s 56.1 Counter-Stmt. ¶ 6, Plaintiff argues that Defendant subsequently "altered the contemporaneous evidence to portray plaintiff in a negative light" for purposes of its summary judgment motion, thereby implicitly denying that she was aware of the amendment at the time it was made.[8]  Pl.'s 56.1 Counter-Stmt. ¶ 8.

Even assuming *arguendo* that Defendant supported its proffered legitimate, non-discriminatory reasons with admissible evidence in the record, Plaintiff has submitted sufficient evidence to allow the issue of Defendant's intent to go to a jury.  As discussed *supra*, Plaintiff has presented evidence, which Defendant has failed to rebut, that she was treated differently by

---

[8] Because Defendant first provided its explanation for the altered evaluation in its reply papers, Plaintiff did not have the opportunity to respond to its assertion that the change in her evaluation was personally explained to her.

the District than Ms. Shima, a similarly-situated Caucasian driver.  Specifically, Plaintiff has

produced sufficient evidence that, notwithstanding that Ms. Shima took a leave of absence from

February 2008 to January 2009, she was permitted to participate in the 2008 Driver Pick Day, to

retain her District health benefits, and received her step increase.  Although Defendant maintains

that it was "CSEA practice" not to permit drivers who would not be present on the first day of

school to participate in the annual Driver Pick Day, it has failed to produce any evidence of such

practice or policy.  Moreover, even assuming *arguendo* that the District did in fact have such a

policy in place, although it contends that Ms. Shima had advised the District that she intended to

be at work for the first day of the 2008-2009 school year, there is evidence to suggest that the

District was aware that Ms. Shima would *not* be returning from leave for the first day of school

as early as May 6, 2008 (i.e., nearly three months prior to the August 15, 2008 Driver Pick

Day).[9]  *See* Sklarin Decl., Ex. Z.  Moreover, despite Defendant's contention that Plaintiff was

not permitted to participate in the Driver Pick Day because she was not going to be present on

the first day of school and was contemplating permanently relocating to Florida, *see* Case Aff. ¶

9, Plaintiff's request for a four month leave of absence does not mention anything about Plaintiff

living in Florida "permanently."  Rather, Plaintiff's August 11, 2008 letter states that her request

for a leave of absence was "due to family health issues and other personal matters that are critical

at this point of time and need urgent attention."  Montgomery Aff., Ex. B.

       With respect to Plaintiff's District health insurance, Defendant argues that Plaintiff's

---

[9] Plaintiff also argues that Ms. DiDonato was permitted to participate in the 2008 Driver Pick Day, notwithstanding
that "she was out as of September 1, 2008."  Pl.'s 56.1 Counter-Stmt. ¶ 17.  Defendant argues, and the evidence
suggests, that Ms. DiDonato's leave of absence was approved on August 21, 2008 and was scheduled to commence
on September 10, 2008 (i.e., after the first day of the 2008-2009 school year).  Sklarin Decl., Ex. Z.  However,
although her leave of absence was scheduled to commence on September 10, 2008, Ms. DiDonato's attendance
records indicate—and Defendant concedes—that she was absent on the first day of the school year.  *Id.*  Defendant
does not state in its submissions whether it was aware as of the August 15, 2008 Driver Pick Day that Ms. DiDonato
would not be able to work on the first day of school.  Accordingly, a question of fact exists regarding the
circumstances surrounding the District's decision to permit Ms. DiDonato to participate in the Driver Pick Day.

benefits automatically expired on August 31, 2008 as a matter of course, and that Plaintiff was not entitled to have her insurance reinstated upon her return from leave in January 2009 because she did not work the 32 hour weekly minimum under the CBA.[10]  Def.'s Mem. L. 3-4, 14. Again, Defendant has failed to cite to any evidence in the record to support its contention that Plaintiff's health insurance "automatically" expired on August 31, 2008 following completion of the 2007-2008 school year.  In fact, the Termination of Coverage form indicates that Plaintiff's District health benefits were terminated specifically as a result of her taking a leave of absence. Sklarin Decl., Ex. R.  Moreover, the Agreement specifically states that "[a]ny employee may request a leave of absence without pay," and that "all the employees' *benefits . . . shall be preserved*."  Sklarin Decl., Ex. H at 14 (emphasis added).  Additionally, Defendant does not dispute that Ms. Shima received health benefits during her one-year leave of absence, although it submits—again, without citation to any evidence—that Ms. Shima "*improperly* received District health benefits during her 2008-2009 leave of absence."  Def.'s Response to Pl.'s 56.1 Counter-Stmt. ¶ 18 (emphasis added).  Moreover, at her deposition, Ms. Case, Assistant Superintendent for Business with supervisory responsibilities for the Transportation Department, testified that she could not recall any bus driver, other than Plaintiff, who did not have their health care coverage restored upon their return from a leave of absence.  Watkins Aff., Ex. 6 (Case Depo. Tr.) at 47-48.

    Finally, with regard to Plaintiff's allegations that she was improperly denied a step increase, Defendant contends that Plaintiff was ineligible for a step increase as a result of her

---

[10] Plaintiff argues that even if her health benefits rightfully lapsed when she took her leave in August 2008, she was only required to work twenty hours upon her return in January 2009 in order to qualify for health benefits under the CBA.  Pl.'s Mem. L. Opp. 10.  However, because the Court finds that an issue of fact exists regarding the propriety of the District's termination of Plaintiff's health benefits in August 2008, it need not address the question of Plaintiff's entitlement to re-enroll in the District health plan upon her return from leave.

2006-2007 leave of absence.  Def.'s Mem. L. 4, 14.  Defendant points to a provision of the CBA,

entitled "Entitlement to Increments," in apparent support of its position.  Sklarin Decl., Ex. H at

8.  That provision states:

> On July 1[st] of each contract year, and until a Successor Agreement
> is executed, each Bargaining Unit Employee shall be entitled to
> and advance one (1) step from the step which he, she or they
> previously occupied in the prior contract year in accordance with
> the wage/compensation schedules set forth in Appendix "D" and
> shall thereafter continue to advance one (1) step each year until he,
> she or they shall obtain the top step.

*Id.*  The cited provision does not support Defendant's position, as it does not indicate that an

employee who takes a leave of absence during a contract year necessarily forfeits her yearly step

increase.[11]  Moreover, as indicated *supra*, the Agreement explicitly provides that an employee's

"benefits and seniority *shall be preserved*" during any leaves of absence that the employee may

take.  Sklarin Decl., Ex. H at 14 (emphasis added).  Finally, Plaintiff has introduced evidence,

which Defendant has failed to rebut, that Ms. Shima received a step increase during her 2008-

2009 leave of absence.  Shima Decl., Ex. 1.

Accordingly, as Defendant has failed to come forward with evidence of a "dispositive

nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact

could reject," and Plaintiff has submitted evidence that she was treated differently by the District

than other similarly-situated Caucasian drivers, the Court finds that Defendant is not entitled to

summary judgment on Plaintiff's Title VII claim.  *Cf. Holtz*, 258 F.3d at 86 (holding that once

defendant made its requisite showing, the burden shifted to the plaintiff to produce evidence that

the defendant's justification was pretextual by, for example, demonstrating that other similarly

---

[11] Moreover, the Court notes that Defendant cites to the *2007-2010* CBA, despite the fact that Plaintiff took her leave of absence during the 2006-2007 school year.  Accordingly, it is not even clear that the 2007-2010 CBA governs Plaintiff's entitlement to a step increase during the 2006-2007 school year, and Defendant has failed to provide the Court with a copy of the predecessor agreement.

situated persons were not subject to the same adverse employment action as the plaintiff).

## IV.   Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is DENIED. The Clerk of the Court is respectfully directed to terminate the motion.  (Doc. 24.)

The parties are instructed to file their joint pre-trial order no later than September 12, 2013 and to appear for a pre-trial conference on September 19, 2013 at 10:00 am, at which a final pretrial conference date and trial date will be set.

It is SO ORDERED.

Dated:     August 13, 2013
           New York, New York

Edgardo Ramos, U.S.D.J.

22